United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, *et al.*,

Plaintiffs,

v.

CAL-KIRK LANDSCAPING, INC., *et al.*,

Defendants.
___________________________________/

No. C-08-3292 EMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 79)**

Plaintiffs include fiduciaries for the following trust funds: the Laborers Health and Welfare Trust Fund for Northern California; the Laborers Vacation-Holiday Trust Fund for Northern California; the Laborers Pension Trust Fund for Northern California; and the Laborers Training and Retraining Trust Fund for Northern California (collectively "Trust Funds"). The Trust Funds are all employee benefit plans. Plaintiffs also include the Northern California District Council of Laborers (hereinafter "Union"). Collectively, Plaintiffs filed suit on behalf of the Trust Funds and the Union against Defendant Cal-Kirk Landscaping, Inc. ("Cal-Kirk"), pursuant to the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132.

Plaintiffs filed a First Amended Complaint ("FAC") on May 7, 2009 (Docket No. 17), which Defendant answered on September 9, 2009 (Docket No. 29). Almost two years later, this Court granted counsel for Defendant's Motion to Withdraw (Docket No. 61), by an order dated December 15, 2011 (Docket No. 71). In that order, the Court instructed Defendant to find new counsel and

make an appearance within 60 days, stating: "Defendant is forewarned that, if it does not find counsel to represent it and make an appearance in this case, then the Court shall, upon Plaintiffs' request, enter a default against Defendant. Plaintiffs may then seek a default judgment against Defendant." *Id*. at 2. Cal-Kirk did not comply with the Court's order within the time specified, and Plaintiffs thereafter moved for an entry of Default. *See* Motion for Default Judgment (Docket No. 73). This Court entered default against Defendant on March 6, 2012 (Docket. No. 74), and Plaintiffs thereafter filed a Motion for Default Judgment (Docket No. 79), which is now pending before the Court.

The Court held a hearing on Plaintiff's Motion for Default Judgment on October 12, 2012, and directed Plaintiffs to submit additional evidence to substantiate their claims. *See* Order Re Supplemental Briefing and Evidence (Docket No. 89). Having considered Plaintiffs' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** in part and **DENIES** in part the Motion for Default Judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed suit against Cal-Kirk on July 9, 2008. *See* Petition (Docket No. 1). Their petition alleges the following facts. Cal-Kirk is a signatory to a written collective bargaining agreement with the Northern California District Council of Laborers. Petition § V. Defendant became subject to the terms of Plaintiffs' "Laborers Master Agreement" when it entered into a Memorandum of Agreement with the Union. *Id*. The Laborers Master Agreement incorporates by reference the various Trust Agreements establishing each of the Plaintiff Trust Funds. *Id*. § VI. A grievance arose between the parties concerning Cal-Kirk's compliance with the Master and Trust Agreements, and a hearing was held before an arbitrator pursuant to the Agreements' dispute resolution process. *Id*. § XI-XII. The arbitrator hearing the dispute determined that Cal-Kirk had not followed the terms of the Agreements, and ordered an audit of Defendant's books and records to determine the amount of unpaid Union wages and Trust Fund contributions due to Plaintiffs. Arbitrator's Decision (Docket No. 82, Ex. A).

Following a field audit by the Trust Fund, and the production of additional information from Cal-Kirk, Plaintiffs determined that Defendant owed the Trust Funds $84,251.21 in unpaid

United States District Court
For the Northern District of California

contributions, $67,250.35 in interest, and $600.00 in liquidated damages, for 6,315.90 hours of work performed between 2005 and 2008. Hagan Decl. (Docket No. 83) ¶15; Supp. Hagan Decl. (Docket No. 92) ¶¶ 4, 7, 9. Plaintiffs also determined that Defendant owed the Union $68,228.71 in wages that should have been paid to union workers, and $9,800.00 in initiation fees. George Decl. (Docket No. 82) ¶6; Supp. George Decl. (Docket No. 91) ¶¶ 8, 9. To date, Defendant has refused to pay any amount toward these sums. George Decl. ¶7; Hagan Decl.¶16.

Denise Zimmerman, an agent authorized to accept service for Cal-Kirk, was served with the summons and initial complaint in this matter by personal delivery on August 7, 2008. *See* Docket No. 4. After this Court granted counsel for Defendant's motion to withdraw, Defendant failed to obtain substitute counsel and an entry of default was made on March 6, 2012. Docket. No. 74. Plaintiffs thereafter filed the pending motion for default judgment on August 27, 2012. Docket. No. 79.

In their motion, Plaintiffs ask for (1) a monetary judgment in the amount of $78,028.71 for unpaid union wages and initiation fees, (2) a monetary judgment in the amount of $152,101.56 for delinquent trust fund contributions, liquidated damages, and interest, (3) an award of reasonable attorney's fees, and (4) an order enjoining Defendant to timely submit all required monthly contributions and contribution reports in accordance with the Agreements. Docket No. 79 at 1; Supp. Br. in Support of Motion for Default Judgment (Docket No. 90) at 3.

## II. DISCUSSION

### A. Adequacy of Service of Process

As a threshold matter in considering a motion for default judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters,* No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at * 2 (N.D. Cal. Jan. 2, 2001). Fed. R. Civ. P. 4(h)(1) authorizes service upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute to receive service and the statute so requires – by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Rule 4(h)(1) also states

that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual," which, in turn, allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. P. § 416.10(a), (b). A corporation may also be served under California law via "substitute service." That is,

> [i]n lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(a).

The proof of service for the summons and initial complaint in this matter indicate that the documents were personally served on Denise Zimmerman, an agent authorized to accept service for Cal-Kirk, on August 7, 2008. *See* Docket No. 4. Pursuant to the Court's December 15, 2011, Order granting counsel for Defendant's motion to withdraw, Defendant's former counsel served Cal-Kirk's Chief Financial Officer, Dwight Griesbach, by substitute service with a copy of the Court's Order via Federal Express Priority Overnight Mail, and informed him that default judgment could result if Cal-Kirk did not retain substitute counsel and enter an appearance in the suit. Hersher Decl. (Docket No. 72) at 2. Mr. Griesbach was also served by Plaintiffs with a copy of the instant Motion for Default Judgment via U.S. Mail at Cal-Kirk's business address. Certificate of Service (Docket No. 85) at 2. The record in this matter contains sufficient evidence to conclude that the initial complaint

and summons, as well as the instant Motion for Default Judgment, and the Court's Order warning of the possibility of default judgment, were served on an officer or managing agent of Cal-Kirk, as required by Fed. R. Civ. P 4 and the California Code of Civil Procedure. Accordingly, the Court finds that service of process was properly effectuated.

B. Merits of Motion for Default Judgment

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Court finds that the *Eitel* factors weigh in favor of granting default judgment. As to the first factor, if the motion for default judgment were to be denied, then Plaintiffs would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The second and third factors – the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint – also weigh in favor of default judgment. Plaintiffs have provided evidence that Cal-Kirk entered into a Memorandum of Agreement with the Northern California District Council of Laborers. *See* Hagan Decl., Ex. C-1 (Memorandum Agreement); *id.*, Ex. C-2

United States District Court
For the Northern District of California

(Extension Agreement). The arbitrator who heard the parties dispute before it was presented to this Court also found that Plaintiffs and Defendant had entered into a binding labor agreement. *See* Minutes of Non-Associated Laborers Board of Adjustment (Docket 82, Ex. A) (recording arbitrator's decision).[1]

The Memorandum Agreement Defendant entered into explicitly incorporates the terms of the Laborer's Master Agreement. Hagan Decl., Ex. C-1 ¶ 1. Under the Laborer's Master Agreement, for the Trust Funds at issue, "each Individual Employer shall pay hourly contributions for each hour paid for and/or worked . . .in accordance with the schedule specified" in the Agreement. Hagan Decl., Ex. B-1 (Laborer's Master Agreement) § 28A. *See also id.*, Ex. A (Trust Fund Agreements); Ex. B-1, § 28A (providing contribution schedule for individual trust funds); *id.*, Ex. C-1, ¶ 3 (providing that the employer shall "pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement to each and every all and singular of the Trust Funds specified in said Master Agreement"). A signatory employer who does not pay hourly contributions to the Trust Funds as specified in the Agreement "agrees that any and all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction." *Id.*, Ex. B-1,§ 28A.

Similarly, the Memorandum Agreement requires individual employers, such as the Defendant, to "comply with all wages, hours, and working conditions set forth in the Laborer's Master Agreement" in "consideration of services performed and to be performed by Laborers for the individual employer." *Id.*, Ex. C-1, ¶ 1. The Laborer's Master Agreement contains detailed provisions for assigning covered work to Union members (and prospective members) through Union maintained hiring halls and work-eligibility lists. *See* Hagan Decl., Ex. B-1 (Laborer's Master Agreement) § 3(B). The Laborer's Master Agreement further requires that "[e]very person covered

---

[1] The minutes record the arbitrator's decision as follows:

> "Based on the evidence presented the Employer is still bound to the terms and conditions of the Laborers Master Agreement. The Employer did not abrogate the agreement in bankruptcy; therefore the Employer is bound to follow the terms of the contract as it is written."

Docket No. 82, Ex. A.

United States District Court
For the Northern District of California

by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union . . ." Hagan Decl., Ex. B, § 3(A)(1). The parties' Memorandum Agreement states that "[c]laims for unpaid wages or trust fund contributions may be submitted to the Labor commission at the sole option of the Union or the appropriate trust fund at anytime, in addition to any other remedy provided by the Master Agreement or this [Memorandum Agreement], or by law. Hagan Decl., Ex. C-1 ¶ 6.

Plaintiffs' amended complaint alleges, and the Court must accept as true, *see Televideo Sys., Inc.*, 826 F.2d at 917, that "for the period of January 2005 through November 2008, [an audit] revealed that Defendant had not submitted fringe benefit contributions to the Trust Funds as required by the Agreements." First Amended Complaint ("FAC") § XVII. Plaintiffs further allege that the audit revealed Defendant had engaged "employees not properly hired under the agreement" to perform covered work, and consequently owed "amounts due to the Union on behalf of its members" for "initiation fees" and "unpaid wages" under the terms of the parties' labor agreements. *Id*. § XVIII. Plaintiffs' amended complaint alleges their audit revealed that the Union and Trust Funds collectively suffered damages in excess of $390,000.00, *id*. § XVIII-XX, though subsequent declarations clarify that the actual amount of damages which they seek in this action is $ 230,130.27, *see* Supp. Hagan Decl. ¶ 14; Supp. George Decl. ¶¶ 8-9.

In sum, the Plaintiffs have successfully stated a claim for relief under ERISA. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement:); *id*. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation). They have also stated a claim that Defendant breached the Agreements by improperly assigning covered work to non-union workers, and suffered contract damages as a result. *See First Commercial Mortgage Co. v. Reece*, 108 Cal. Rptr.2d 23, 33 (2001) (Under California law, a breach of contract claim may be established where a party demonstrates: [1] the existence of a contract; [2] performance by the plaintiff; [3] breach by

the defendant; and [4] damages). The grievance arbitrator confirmed that Cal-Kirk's hiring of non-union workers to perform work covered by the Laborers Master Agreement constitutes breach of contract; the arbitrator found that at least some "wages and benefits . . . should have been paid [to union members] for work performed by the Employer which is covered by the terms of the contract." *See* Minutes of Non-Associated Laborers Board of Adjustment (Docket 82, Ex. A) (recording arbitrator's decision).

Examining the fourth *Eitel* factor, the sum of money at stake in the action, the Court finds that the amount of damages at stake here is appropriate, having been tailored to the specific alleged misconduct of Cal-Kirk and causally related to the breaches of duty alleged. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). While the total amount of damages sought by Plaintiffs – $230,130.27 – exceeds the "modest" sum of $94,858.81 found suitable for default judgment in *Tragni v. Manzanares*, 2011 U.S. Dist. LEXIS 94281, at *5 (N.D. Cal. Aug. 23, 2011), it is a far cry from the almost $3 million dollars at stake in *Eitel*. *See Eitel*, 782 F.2d at 1472 (the fact that $2,900,000.00 was at issue supported the court's decision not to enter judgment by default). While not typical, courts of this district have awarded damages in the hundreds of thousands of dollars range on a motion for default judgment. *See e.g. Bank of the W. v. RMA Lumber Inc.*, C 07-06469 JSW, 2008 WL 2474650 (N.D. Cal. June 17, 2008) (awarding $469,760.64 in damages); *United States v. Moss*, C-07-4632 JSW (EMC), 2008 WL 1995116 (N.D. Cal. Apr. 2, 2008) (awarding $306,187.48 in damages). Further, Plaintiffs have submitted declarations stating that they reduced the size of their original claims based on their audit results and supplementary information submitted by Cal-Kirk. *See e.g.* George Decl. ¶ 5.

Turning to the fifth factor, Plaintiffs properly note that the "possibility of a dispute concerning material facts can weigh against default judgment." Mot. for Default Judgment at 7 (citing *Eitel*, 782 F.2d at 1472, for the proposition that default judgment may not be appropriate where "the parties disputed material facts in the pleadings"). Despite Plaintiffs suggestion to the contrary, Cal-Kirk *has* disputed the material facts in this matter. Its Answer to the amended complaint specifically disputes that it was a signatory to a written collective bargaining agreement

with Plaintiffs after June 30, 2006. *See* Answer (Docket No. 29), § V. It avers that "no entity, including the arbitrator, has ever certified the results of the audit, or ruled that Defendant owes Plaintiffs any money." *Id.* § XIII. It admits that "Plaintiffs demanded monies from Defendant," but denies that the money demanded is "due and owing." *Id.* However, even though it initially disputed these facts, Cal-Kirk's failure to defend itself following the withdrawal of its counsel renders these disputed facts as admitted. *See Matter of Visioneering Const.*, 661 F.2d 119, 124 (9th Cir. 1981) (holding that "[w]ell pleaded allegations of the petition, including jurisdictional averments, are taken as admitted on a default judgment" even though defendant initially disputed allegations); *S.E.C. v. Interlink Data Network of Los Angeles, Inc.*, CIV. A. 93-3073 R, 1993 WL 603274 (C.D. Cal. Nov. 15, 1993) (same). *See also* Fed. R. Civ. P. 55 (allowing entry of default when "a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* . . . ") (emphasis added)*; Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986) *amended*, 807 F.2d 1514 (9th Cir. 1987) ("Well-pleaded allegations are taken as admitted on a default judgment.") (citing *Thomson v. Wooster*, 114 U.S. 104, 114 (1884)). At no time did Defendant set forth evidence why it did not owe the moneys claimed.

The sixth factor also weighs in favor of default judgment. Defendant initially retained counsel, but upon counsel's withdrawal, Defendant failed to secure substitute counsel as directed by this Court, and appears to have abandoned this litigation. Cal-Kirk's default cannot be attributed to excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service is not excusable neglect).

Finally, while public policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Cal-Kirk's refusal to defend this action renders a decision on the merits "impractical, if not impossible," *PepsiCo*, 238 F. Supp. 2d at 11.

On balance, the *Eitel* factors weigh in favor of default judgment. In light of this finding and the fact that Defendant, a corporation, was properly served in this action but nonetheless has failed to defend itself, the Court **GRANTS** Plaintiffs' Motion for Default Judgment.

///

///

C. Damages and Other Relief

Because the Court concludes that default judgment is warranted, it must determine what damages or other relief is appropriate. Plaintiffs have the burden of "proving up" their damages or the need for other requested relief. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

1. Unpaid Contributions, Interest, and Liquidated Damages

Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 29 U.S.C. § 1132(g)(2). Plaintiffs seek damages for the unpaid contributions due on behalf of fourteen non-union employees who performed work covered by the Laborers Master Agreement for Cal-Kirk between 2006 and 2008.

Following a hearing on Plaintiffs motion, this Court ordered Plaintiffs "to submit further evidence documenting Plaintiff's calculation of damages and interest in this matter." Order RE Supplemental Briefing (Docket No. 89). In response, Plaintiffs produced a supplemental declaration from John Hagan, the Accounts Receivable Manager for the Laborers Funds Administrative Office of Northern California. *See* Supp. Hagan Decl. (Docket No. 92). In that declaration, Mr. Hagan describes how employees from his office, including himself, completed an audit of Cal-Kirk's records. Supp. Hagan Decl. ¶¶ 4-7. After Defendant challenged the initial audit findings and produced additional payroll records, Mr. Hagan revised his audit report and "determined that Defendant had not properly reported or paid contributions for 6,315.90 hours of covered work," which, at the applicable hourly contribution rates set forth in the Master Agreement, amounts to "$84,251.21 in unpaid contributions." *Id.* ¶ 7. Exhibit A to Hagan's supplemental declaration summarizes the audit results and his calculations of all Trust Fund contributions due and owing. *See* Supp. Hagan Decl., Ex. A.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Cal-Kirk's records provided only year-to-date payroll summaries for the four years audited by Plaintiffs. Without accurate monthly summaries, Plaintiffs' auditors "calculated the contributions and interest as though all the unpaid hours were worked in December of 2005, 2006, and 2007, or in November of 2008, the last month included in the audit." Supp. Hagan Decl. ¶ 9. Using December (or November of 2008) as the base month for calculation of unpaid contributions resulted in an assessment of "significantly less interest on Defendant's unpaid contributions than would have accrued had the hours been distributed in the months the work was actually performed." Supp. Hagan Decl. ¶ 9. Thus, any hours worked in January of 2005 were not counted as having been worked by the auditors until December 2005, and any required Trust Fund contributions did not become due until January 25, 2006. *See id.*, ¶¶ 9-10; Ex. A (Laborers Health and Welfare Trust Fund Agreement), Art. II § 10 (requiring contribution payments by the 25th of the month in which it is due). Signatory employers who fail to pay Trust Fund contributions on time are assessed liquidated damages at a flat rate of $150.00 per month and simple interest on all unpaid contributions of 1.5% per month. Hagan Decl. ¶ 10; Supp. Hagan Decl. ¶ 8; Ex. A (Laborers Health and Welfare Trust Fund Agreement), Art. II § 10.

Using this methodology, Plaintiffs calculate that Defendant owes the Trust Funds $84,251.21 in unpaid contributions for the 6,315.90 hours of covered work. Supp. Hagan Decl. ¶ 14. Since the Trust Funds assumed all hours were worked in the last month for each year audited (and November for 2008), they seek $600.00 in liquidated damages (four months at $150.00 per month), which is far less than what would be due had the covered hours been distributed across multiple months of a calendar year. Plaintiffs calculate that Cal-Kirk owes an additional $67,250.35 in interest, which, as noted, is far below what would be required "had the hours been distributed in the months the work was actually performed." Supp. Hagan Decl. ¶ 9 (Thus, "[h]ours worked in January of 2005, for example, did not begin accruing interest until February of 2006."). Interest was assessed beginning in the first month in which contributions were delinquent (e.g. February 2006 for hours worked in December 2005), and in "every month thereafter until August 2012 (when the amounts were submitted to the Court in conjunction with Plaintiffs' motion for default judgment)." Supp. Hagan

United States District Court
For the Northern District of California

Decl. ¶ 10. In total, the Trust Funds calculate their damages to be $152,101.56. *See* Supp. Hagan Decl. ¶ 14 (one cent math error corrected in calculation of total).

On a motion for default judgment the "Plaintiff has the burden of proving damages." *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d at 1226. *See also Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) ("Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain.") (citations omitted). The Court finds that Plaintiffs have met their burden as to their Trust Fund claims, and consequently awards damages to the Trust Funds in the amount of $152,101.56.

2. <u>Underpaid Wages and Initiation Fees</u>

The Union Plaintiff asks for $78,028.71 in damages from Cal-Kirk, representing unpaid union wages and initiation fees due under the Laborers Master Agreement for "covered work" performed in violation of the Agreement between 2005 and 2008. In support of this request, the Union has provided two declarations from David George, the Business Manager for Plaintiff Local 139. The Union did not conduct an independent audit of Cal-Kirk's records, but instead relied upon data collected by the Trust Funds during their audit. *See* Supplemental Declaration of David George (Docket No. 91), ¶ 5.

As stated above, the Memorandum Agreement signed by Cal-Kirk required it to "comply with all wages, hours, and working conditions set forth in the Laborer's Master Agreement" in "consideration of services performed and to be performed by Laborers for the individual employer." Hagan Decl., Ex. C-1, ¶ 1. The Court has already found that Cal-Kirk failed to comply with this provision by employing non-union workers to perform "covered work." In so doing, Cal-Kirk violated the "Union Security provision of Section 3 of the Master Agreement, which requires that individuals performing covered work be or become members of the Union." Supp. George Decl. ¶ 5. *See also* Hagan Decl., Ex. B (Laborer's Master Agreement) § 3(A)(1) (stating that "[e]very person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union . . ."). Cal-Kirk also violated the specific wage

United States District Court
For the Northern District of California

provisions of Section 18 of the Master Agreement "by paying at rates other than those in the contract" insofar as it did not pay anything, let alone contract rates, to union members for the covered work. Supp. George Decl. ¶¶ 5-6.

The Union declarant states that "the appropriate remedy" for hiring non-union workers to perform work covered by the parties' agreements "is for the employer to compensate union members who would have received that work, had the employer followed the contract." *Id.* ¶ 6. The amount recovered is then paid to "union members on the out-of-work list" who "would have been paid for working the job." *Id.* ¶ 6. The Union provided evidence that awarding this form of expectation damages, referred to as the "Alcan remedy," has been "a longstanding practice" of labor arbitrators, "particularly in Northern California, for employers who violate the terms of the Laborers' Master Agreement hiring hall provisions." *Northern California District Council of Laborers v. Valentine Corp.*, 2003 WL 25833862 at *9 (N.D. Cal. No. 03-CV-00170, Arbitration Decision of Gerald McKay, Arbitrator).[2] *See also In the Matter of Arbitration Between Respondent [Redacted] and Grievant [Redacted]*, 2012 WL 1493859 at *10, American Arbitration Association Case No. [Redacted], February 23, 2012, Ronald Hoh, Arbitrator ("the Employer shall make whole the individuals who would have been dispatched by the Union Hiring Hall had the Employer abided by the applicable collective bargaining agreement, [as] in the matter set forth in the decision of Arbitrator Samuel Kagel in Associated General Contractors/AlCan 38 LA 500 (1961)."); *In Re Associated General Contractors, et. al.*, 38 LA 500 (1961) (the arbitration decision that first formulated the "Alcan remedy."). The Court finds that the "Alcan remedy" is an appropriate measure of damages to compensate the Union and its members, particularly those on the out-of-

---

[2] In full, Arbitraror McKay stated:

> It has been a longstanding practice, particularly in Northern California, for employers who violate the terms of the Laborers' Master Agreement hiring hall provisions to pay a penalty which is determined by calculating the amount of pay those employees who were on the out-of-work list at the time would have received on the employer's project had they been properly dispatched by the Union. This practice extends back at least as far as 1962.

*Northern California District Council of Laborers v. Valentine Corp.*, 2003 WL 25833862 at *9.

United States District Court
For the Northern District of California

work list who should have been dispatched to perform the covered work, for the loss of the benefits they should have received had the contract between the parties been performed. This remedy accords with basic breach of contract remedies.

Using the audit data provided by the Trust Funds, the Union determined that fourteen non-union workers (and one union member) performed the 6,233.15 hours of covered work that should have been performed by members of the Union at rates specified in the Master Agreement. George Decl. ¶ 5; Supp. George Decl., Ex. A (two spreadsheets containing audit results and wage calculations for each of the fifteen non-union workers). One Union member named Mark Jacobs performed covered work and was paid at an above-contract rate. *See* Supp. George Decl., Ex. A. The Union does not seek damages based on the hours he worked. David George, the Union's declarant, calculated "the amount of wages due under the contract for [the 6,233.15] hours" using the total annual figures of hours worked by each employee uncovered by the Trust Fund audit, multiplied by the appropriate hourly wage rate specified in the Master Agreement, to arrive at an initial calculation of damages. Supp. George Decl. ¶¶ 6-8. The Union Plaintiff has voluntarily elected to seek "only the wage differential" between what Cal-Kirk should have paid under the Master Agreement and what it actually paid these employees for the covered work (except in the cases of Wayne Griesbach, who was consistently paid more than the contract rate, and whose wage differential would have resulted in a negative number). *Id*. To calculate the wage differential, George subtracted "over $75,000 for the wages that Cal-Kirk did pay for this work" to arrive at a final underpayment figure of $68,228.71. *Id*. ¶ 8.

In addition to the underpayment of wages, the Union seeks an award of $9,800 in unpaid union fees that would have been due under the Agreement. Cal-Kirk used fourteen non-union workers to perform covered work, each of whom should have paid a $700 initiation fee to join the Union. Supp. George Decl. ¶ 9. The Union is not seeking to recover the monthly dues that these non-union employees would have paid had they joined the Union. *Id*. In total, the Union Plaintiff asks for damages in the amount of $78,028.71. The Court finds that Plaintiff has met its burden to prove damages, *see Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d at 1226, and consequently awards damages to the Union in the amount of $78,028.71.

United States District Court
For the Northern District of California

3. Injunctive Relief

Plaintiffs ask for an injunction directing Cal-Kirk to "timely submit all required monthly contribution reports and contributions due and owing by Defendant." Mot. for Default Judgment at 1. ERISA authorizes the court to provide for other legal or equitable relief as it deems appropriate. 29 U.S.C. § 1132(g)(2)(E). However, "the bases of injunctive relief are irreparable injury and inadequacy of legal remedies." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1986). Plaintiffs' motion makes no argument that it faces a threat of irreparable injury, nor that its requested legal remedies are inadequate. Plaintiffs do not allege that the parties are still in a contractual relationship such as would require Cal-Kirk to submit monthly reports to them. Indeed, Plaintiffs' motion advances no arguments at all in support of its prayer for injunctive relief. Having failed to show that injunctive relief is warranted in this action, the Court **DENIES** this element of Plaintiffs' motion.

4. Attorney's Fees and Costs

Finally, Plaintiffs ask to be awarded their attorney fees and costs in this matter. Plaintiffs have submitted the declaration of Daniel Brome (Docket No. 81) in support of their request for fees and costs, and have provided detailed time records of the three paralegals and seven attorneys that worked on this case. Plaintiffs' counsel and their support staff expended a total of 136.75 hours on this case. Brome Decl. ¶ 3. A review of the time records indicates that the majority of the claimed time was spent while Cal-Kirk was engaged in settlement talks with Plaintiffs, with the assistance of its own retained counsel. *See* Brome Decl, Ex. A.

It is clear that costs and fees incurred by the Trust Fund Plaintiffs are recoverable under ERISA. Section 502(g)(2) of ERISA, codified at 29 U.S.C. § 1132(g)(2), "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions." *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983). However, Plaintiffs, on behalf of the Union, have cited no authority that fees and costs incurred in bringing Union-specific claims for non-payment of union initiation fees and contract wages are subject to similar cost-shifting. Plaintiffs' Motion for Default Judgment suggests that the declaration of Daniel Brome "documents the time spent by the Trust Funds for this case," but it is clear from the billing records

provided that some of the time included was spent litigating Union-specific claims. *See* Mot. for Default Judgment at 10; Brome Decl., Ex. A.

"It is well-settled that the award of attorneys' fees is a matter within the discretion of the trial court, and that an award of attorneys' fees cannot be disturbed on appeal, absent a showing of abuse of discretion." *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979) (cited with approval in *Kemmis v. McGoldrick*, 706 F.2d 993). Having reviewed Plaintiffs' attorneys' billing records in detail, the Court finds that five hours billed by Kristina M. Zinnen (at $345 per hour), three hours billed by Concepcion Lozano-Batista (at $325 per hour), and 2.25 hours billed by Daniel S. Brome (at $290 per hour), were clearly incurred handling the Union Plaintiff's claims and cannot be included in a fee award under § 1132(g)(2). Therefore, the Court deducts $3,352.50 from the $37,146.25 in fees Plaintiffs seek, leaving a remainder of $33,793.75. The Court concludes that this remainder amount is reasonable as a fee award, given the amount of work done by Plaintiffs in this suit, and therefore **GRANTS** Plaintiffs' requests for fees in the amount of $33,793.75. The Brome declaration indicates that Plaintiffs also seek "approximately $1,160.00" for unbilled work associated with the instant motion. Brome Decl. ¶ 14. Although they have not provided the Court with any record evidence documenting further time spent on this matter, this is a fair estimate for the work herein.

Plaintiffs' also seek an award of $899.88 in costs. Brome Decl. ¶ 15. Section 1132(g)(2) specifies that both "reasonable attorney's fees *and costs* of the action" are "to be paid by the defendant." *Id*. (emphasis added). The Court has reviewed Plaintiffs' accounting of their costs in this matter, and finds that all costs claimed are those "customarily billed separately in [this legal] market" and are thus "recoverable as 'reasonable attorney's fees' under 29 U.S.C. § 1132(g)(2)(D)." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006). Therefore, the Court awards Plaintiffs $899.88 in costs, bringing the total fee and cost award in this matter to $35,853.63.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Default Judgment. Plaintiffs are awarded $152,101.56 for unpaid contributions, interest,

and liquidated damages on their Trust Fund claims, $78,028.71 for underpaid wages and initiation fees on their Union claims, and $35,853.63 for reasonable attorney costs and fees. Plaintiffs' request for injunctive relief is **DENIED**.

This order disposes of Docket No. 79.

IT IS SO ORDERED.

Dated: November 19, 2012

EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California